2009-31-12. Mr. Kinnemuth. Your Honor, I'm Dan Kinnemuth, attorney for the petitioner Francisco Jardim, and I would like to basically address one major issue at first concerning uncontroverted physical evidence involving the layout of the Patton Museum, and I'd like to use the exhibit, if I may bring that up. Was that admitted in the proceedings below? The administrative judge, I introduced it on three separate occasions. She refused to let me lay a foundation even with a government witness and with one of my own witnesses and the petitioner. I also asked to make an offer of proof. The judge refused to let me make an offer of proof. Then I asked her to please place the exhibit in the AJ's rejected exhibits file in accordance with the administrative manual of the board. She refused that also. So on petition for review, I had it attached to my petition for review. It's part of my argument, the judge's errors. So you're arguing here that she abused her discretion. She abused her discretion. In failing to let you present it below. That's correct. So may I? You think our looking at it is going to make a difference. Didn't she refuse this evidence because it wasn't to scale? She said it was not to scale. This diagram was a part of the records of the museum. My client was the director of the museum. What he had done was he used an already existing schematic, the schematic here. He labeled the restrooms and the Abrams auditorium and the various other parts of the museum. It was an attempt to show where the incident took place and how it was impossible according to Ms. Hutchins testimony that she claims the incident occurred at 430. She's very specific about it. She cannot remember the month, the day, or the year of the incident. But she remembers specifically that my client came to her in the gift shop of the Pad Museum. This is the gift shop here. And he came to her at 430 when the gift shop was being closed. The cash registers were being... Counsel, your argument now to me doesn't seem to be about the admissibility of this evidence. But you seem to be using it as an attempt to disprove testimony that the administrative judge accepted. But since it wasn't part of the record, we're not permitted to use it for that purpose. Judge, this should have been admitted. But there was testimony concerning the layout of the museum. There was testimony concerning the particular overhead door that was presented. It would have been a lot better, and the judge would not have been confused, if she had relied on the schematic. Because it would have been very clear to her. The judge very specifically says in her decision that somewhere here in the back, Ms. Hutchins went out the door to the employee parking lot. Well, the problem is the employee parking lot is on the left-hand side of the museum. Ms. Hutchins testified that after the sexual incident took place in the conference room, that she walked out this hallway past the auditorium through this overhead door area. She walked through this area and then into the administrative area offices of the museum. Then she came out the employee door, and the staff parking lot is right here. In order to do that... But all of this was subject to testimony, and the administrative judge gave credibility to the other witnesses and not to a client. What I'm saying is that Ms. Hutchins, by her own testimony, the judge accepted her credibility. If you go by Ms. Hutchins' testimony and accept that, it's an uncontroverted, impossible physical fact for her to have gone through this area and gone through this door. Because at 430, the guards automatically seal this area way off from the rest of the museum. She can't go through a steel door. That door was not on a timer, was it? No. What happens is that they clear the patrons out of the museum. This auditorium, they show a film about General Patton here. And then at 430, the guard puts a key into an area, a lock, which has a motor, an electric motor. And this is like a clanking, very heavy steel door. It comes down, and it totally seals this off. So at 430, this was totally sealed off. According to Ms. Hutchins, the testimony that the judge accepted, she would have had to go through a straight, solid steel door to go to the employee parking lot. If it was down at the time. But there is also testimony that the door is operated by the security personnel with a key. Correct. And there was testimony about who did what when. And the administrative judge made a determination based upon the assessment of all the credibility of all the witnesses that testified. The judge made it found. Again, we are obviously arguing that this witness was not credible. But what is important is that we accept everything that the judge accepted from this witness. Her testimony is physically impossible. It could not happen. It's only physically impossible if the door was locked. But the judge specifically rejected the testimony of Sergeant Borger, saying that she didn't believe that he could be testifying. That it happened with precision at 430 every day. She's got an explicit fact finding on that. She doesn't believe that the door is locked at 430 every day. So your impossibility argument only survives if she doesn't make a credibility determination that the door is not locked every day at 430. There was no evidence that was ever presented to rebut our evidence concerning the locking, the security procedures of this museum. As you said, Judge, Mr. Borger, the former security chief who was the sergeant of the guard, specifically testified it was invariable that this area was closed off at 430 every day that the museum was open. And Specialist Rodriguez also testified to the same thing. And my client briefly testified to the same thing. No other witness was ever called. No other evidence was presented by the government that this steel door was not down at 430 every day. And we accept Ms. Hutchins' testimony. She says he got me right before 430, took me to the conference room, and I left after 430. So Ms. Hutchins says the door wasn't locked because she walked through it. So that's contrary testimony. Well, Ms. Hutchins didn't really know what she was doing, period. It's our contention. I don't necessarily doubt that you might be right about that. I read all the testimony. But unfortunately, I don't get to make credibility determinations in the first instance. I think we understand you at least at that point. What else do you have, Mr. Kitterman? The other issues that we're arguing also is on the Bornicoff rule, the case of Wesley Bornicoff versus the Department of Justice coming out in 1981 by the board. And it's been reiterated many times in the board's decisions as part of their common law. And that requires an analysis in each case by an administrative judge concerning the admissibility of hearsay evidence. And we certainly don't argue that an administrative process, that you can't use hearsay evidence, it's used all the time. But there is a factor, a process, an analytical framework that must be used. And one of the things that you're looking for is, is the witness a disinterested witness? And also, if the statement was not taken as a routine matter, such as one that's in an investigation, then that's something that the judge really seriously has to take into consideration. And in this case, the judge found that Sergeant Joshua Hutchins' declaration in the 15-6 investigation was very substantial evidence to corroborate his wife's testimony. And we did not get the chance to cross-examine him. We thought we would because the government did arrange his deposition. We were waiting for that, and suddenly it was canceled. There was no explanation why it was canceled, period. So that prevented us from doing that cross-examination. Did you notice his deposition at any time? Did we notice it? Yes. No, we did not. The government noticed it, and they were arranging his deposition. He was in Germany at the time, processing to go to Iraq. But they canceled it while they had the opportunity. We were going to do a video teleconference. So again, the question becomes, do we as the appellant, are we under the obligation to bring in hostile witnesses and present the government's case, or do we waive our right to complain about the fact that this judge failed to do her analysis? We definitely have that right to bring that up because that is an analytical framework that the administrative judge is supposed to go through. She doesn't necessarily have to say, these are the eight factors, but she has to show a demonstrated attempt to do some type of analysis as to the weight that should be accorded to the affidavit. And what this husband said was very, very serious. He says, my wife came in and showed me the stain on her jacket, and then I didn't do anything about it, but I mean, I took it into consideration. She was crying. She was upset. Then he goes on to talk about how my client went to his quarters and begged for forgiveness and did certain things, and also about emails that were sent with various attachments. We could have presented evidence to discredit him, and we had the right to cross-examine him. This man, my client, has lost his job. He is financially in ruin, and we certainly should have had that right to do that cross-examination. We certainly should not be compelled to bring him in as our own witness. The government had control of him, and there's also under Bornicoff no explanation by the government why they canceled his deposition. And certainly they could have even called him as a rebuttal witness after the hearing. The hearing went on for three days. It could have been done from Iraq, because very often soldiers testify from Iraq by telephone. So all of that could have been done. We think that is all an abuse of discretion. You're into your rebuttal time, and we'll save it for you if you like. Thank you, Your Honor. Mr. Silbrand. Thank you, Your Honor. May it please the Court. This case is solely about credibility. The administrative judge made a credibility determination. She determined that the Army's witnesses were more credible than Mr. Jardim's. But wasn't that diagram relevant? The diagram may or may not be relevant. The administrative judge chose not to admit into evidence, and J.A. 207, she gave her reason why. She said, I quote, you know, I don't know, Mr. Edwards, I don't know what your opinion is about this. I mean, the lady testified the incident occurred shortly before close, didn't last very long, was her testimony, and then she left through the door that she ordinarily left through. So I don't know what you can establish through him that I don't understand. I don't care where the doors are. I mean, she said she did not see him. She did not. She said she did not see anyone, or she doesn't recall who was present when that occurred. So were you establishing through what doors and what closing procedures that the museum was locked tight and she couldn't get out unless she, yes, that's went through a door. And the administrative judge went on to say, okay, I don't need the schematic. Ask him some questions. I don't care about the schematic. It's not drawn to scale, and therefore I'm not admitting it into evidence. She made a specific finding that it was not relevant to her determination of the credibility of these witnesses. Pursuant to this court's controlling precedent, credibility is virtually unreviewable unless there is uncontroversial evidence to the contrary. In this case, there is nothing in evidence that is incontrovertibly contrary to the administrative judge's determination. Moreover, Mr. Jardim did not even argue in his briefs that the administrative judge made reversible error by failing to admit this diagram into evidence. Therefore, that argument should be waived. With respect to the affidavit of Sergeant Hutchins, Mr. Jardim chose not to call Mr. Hutchins as an adverse witness. He had every opportunity to do so. He didn't make an attempt to. So he should not be permitted to now come into this court and argue that he was somehow deprived of a due process right. As this court has repeatedly held, the determination of credibility and also whether to accept hearsay evidence is discretion that is left up to the board. Therefore, for the reasons stated in our brief and the reasons I have stated today, we respectfully request that this court affirm the decision of the board. Thank you, Mr. Silverbrand. Mr. Kinnemont has some rebuttal time. I just have maybe one comment to make. Again, the appellant should not be required to present the government's case. I used to represent the government. I always had to present the government's case. I never expected the employee to present my case for me. In this case, the government arranged for Sergeant Hutchins to testify and at the last minute they dropped it. We did not have control of Sergeant Hutchins. Sergeant Hutchins was in the Federal Republic of Germany. We had no control over him and we expected that he would testify and then he was dropped. We should not be burdened and we have not committed any type of waiver. The Bradley case and other cases have said that it is totally irrelevant whether the appellant brings forth the hostile witnesses and also the government cannot be allowed to enhance the declaration of Sergeant Hutchins by their decision, unilateral decision, to call him as a witness. So that is very detrimental and it is an absolute abuse of discretion by this judge. As far as one of the other issues, if we look at the judge's decision, she states and talks about the fact that there was a door in the back of this Abrams Auditorium, Abrams Wing, which led out to the parking lot in which Ms. Hutchins went out. She is totally confused. The door is over here on the left side where she went through the administrative area. The judge is definitely confused about the whole picture and she would not give us the elementary, fundamental chance to try to explain to her the layout of this museum. Whether it is totally drawn to scale, is it really immaterial? Totally immaterial? We are not talking about line of sight where you can see people. We are just talking about the layout of the auditorium, the gift shop, the administrative offices, and where the employee exit is. So drawing to scale is really a very poor basis for turning down this exhibit. We did definitely argue in our brief that it was improper for the judge to turn down our exhibit. I could not even lay a foundation for it. I could not even make an offer of proof. I could not even put it in the rejected exhibit file. The judge totally rejected me on everything. Thank you very much, Your Honor. Thank you, Mr. Kinnerman. The case will be taken under advisement. All rise.